No. 93,128

In the Matter of GORDON M. ROCK, JR., *Respondent*.

105 P.3d 1290

Opinion filed February 18, 2005.

*Alexander M. Walczak*, deputy disciplinary administrator, argued the cause, and *Stanton A. Hazlett*, disciplinary administrator, was with him on the formal complaint for the petitioner.

No appearance by respondent.

*Per Curiam*: This is an original, uncontested proceeding in discipline filed by the office of the Disciplinary Administrator against Gordon M. Rock, Jr., an attorney licensed to practice law in the state of Kansas whose last known business address is in Johnson County, Kansas.

The formal complaint filed by the Disciplinary Administrator alleged that Rock violated Kansas Rules of Professional Conduct (KRPC) 1.1 (2004 Kan. Ct. R. Annot. 342) (competent representation), KRPC 1.3 (2004 Kan. Ct. R. Annot. 354) (diligence and promptness), KRPC 1.4 (2004 Kan. Ct. R. Annot. 367) (communication with client), KRPC 1.15(a) (2004 Kan. Ct. R. Annot. 414) (safekeeping property), KRPC 1.15(b) (prompt delivery of funds or property), KRPC 1.16(d) (2004 Kan. Ct. R. Annot. 426) (termination of representation), KRPC 3.4 (2004 Kan. Ct. R. Annot. 449) (compliance with discovery requests), KRPC 8.1 (2004 Kan. Ct. R. Annot. 480) (cooperation in disciplinary investigations), KRPC 8.4(a) (2004 Kan. Ct. R. Annot. 485) (professional misconduct), KRPC 8.4(b) (committing a criminal act), KRPC 8.4(c) (dishonest, fraudulent, or deceitful conduct), KRPC 8.4(d) (conduct prejudicial to the administration of justice), KRPC 8.4(g) (conduct adversely reflecting on fitness to practice), and Supreme Court Rule 207 (2004 Kan. Ct. R. Annot. 261) (cooperation with Disciplinary Administrator).

The complaint was heard by a duly constituted hearing panel of the Kansas Board for Discipline of Attorneys on May 20, 2004. The

respondent, Gordon M. Rock, Jr., although lawfully notified, failed to appear.

The hearing panel, after admitting exhibits and hearing testimony by seven witnesses, made the following findings of fact from the five different complainants, which are summarized as follows:

## Monica Hayden-Carroll

In March 2001, Monica Hayden-Carroll retained Rock to bring a medical malpractice lawsuit against an orthopedic group that operated on her knee. Hayden-Carroll paid Rock approximately $1,150, including a filing fee, record copying fees, and an expert evaluation fee. Rock filed an action on behalf of Hayden-Carroll in the Johnson County District Court in August 2001. In March 2002, Rock advised Hayden-Carroll that she did not have a case and told her that he wanted to dismiss the case, investigate different options, and refile within 6 months. Although Hayden-Carroll repeatedly attempted to contact Rock and inquire about the status of her case, Rock failed to respond to any of Hayden-Carroll's calls until July 2002. At that time, Rock informed Hayden-Carroll that she did not have a claim. Hayden-Carroll requested a copy of the medical expert's report and the return of her records. Rock did not provide Hayden-Carroll with a copy of the medical expert's report or return her medical records. In December 2002, this court issued a subpoena duces tecum to Rock requesting that he produce all of the files, memoranda, records, and documents regarding his representation of Hayden-Carroll. The Disciplinary Administrator's office attempted to serve the subpoena but could not locate him. Rock failed to produce any of the documents requested, and Hayden-Carroll had to replace all of her medical records.

## Owen Lecheler

Owen Lecheler hired Rock in February 2000 to represent Lecheler's brother, Norbert, who lived in a nursing home because he had been paralyzed from the waist down in a car accident. Lecheler paid Rock $2,867.83 for medical records and an expert consultation. In November 2001, an insurance company offered to settle with Norbert for $500,000, but Rock advised Lecheler that the

offer was insufficient and he should proceed with a lawsuit. Lecheler attempted to call Rock numerous times regarding the status of his brother's case, but Rock failed to respond until he met with Lecheler and Norbert in October 2002. At that time, Lecheler paid Rock $1200: $200 for the filing fee and $1000 for a video about Norbert's life. Lecheler again attempted to contact Rock regarding the case but discovered that Rock had left his office. Rock failed to respond to any of Lecheler's messages. Lecheler never received the video about Norbert's life, and Rock failed to file an action for Norbert. Lecheler contacted another attorney to pursue Norbert's case, but the status of any lawsuit is unknown. Although another attorney requested Norbert's file, Rock has not returned any of Norbert's medical records. The Client Protection Fund reimbursed Lecheler for the money he paid Rock for expenses.

## Kathy White

Kathy White retained Rock in October 2001 to pursue a possible medical malpractice action arising from the death of her husband. White obtained the majority of her husband's medical records and provided them to Rock. After several months passed, White began trying to contact Rock, but none of her calls were returned. Finally, in July 2002, White left a message with Rock stating that she would withdraw her case if she did not hear from him. Rock returned this message but could not advise White regarding her case. He requested 10 days to review the records. Rock called White as promised but requested more time to review the records. When Rock failed to call her as promised, White left a message stating that she was terminating his representation. She asked Rock to return her husband's records, but Rock claimed to have lost them and never returned them. White was unable to determine that she had an actionable claim until after the statute of limitations passed.

## Marsha Mendenhall

Marsha Mendenhall engaged Rock in June 2001 to pursue a medical malpractice claim. Rock filed a petition on Mendenhall's behalf in August 2001, but later failed to designate an expert in accordance with the court's discovery order. As a result, the de-

fendant filed a motion to dismiss in April 2002, and Mendenhall's petition was dismissed. Mendenhall did not discover that her petition had been dismissed until June 2002, when she contacted the Wyandotte County District Court regarding her case. Mendenhall had left numerous messages for Rock from January 2002 until June 2002, but Rock never returned her calls. However, in October 2002, Rock contacted Mendenhall to ask if she wanted to refile her petition. Because she had contacted another attorney and continued to investigate her case, Mendenhall knew that she did not have a cause of action so she declined, but she requested that Rock return all of her personal records. Rock never returned Mendenhall's records.

### Gwendolyn G. Howard

Gwendolyn G. Howard retained Rock in July 2001 to represent her in collecting insurance proceeds and paying medical bills associated with injuries she received in a car accident. In August 2001, Rock received an insurance check from United States Automobile Association (USAA) made out to himself, Howard, and Howard's husband. Howard and her husband endorsed the check with the understanding that Rock would use the money to pay her medical expenses before distributing the balance. In March 2002, one of Howard's medical providers sued her for a delinquent bill. A year later, Rock appeared at a hearing regarding the lawsuit on Howard's behalf and told her that he would take care of the matter. However, Rock failed to appear at the trial in June 2003, and Howard had to retain another attorney to represent her. Howard's new attorney discovered that Rock had cashed the $50,000 USAA check in September 2001 without paying any of Howard's medical bills or providing any proceeds to Howard. The Johnson County District Attorney's office initiated a criminal investigation regarding Rock's actions with Howard's insurance proceeds. The Client Protection Fund reimbursed Howard for the $50,000 stolen by Rock.

The exhibits, testimony, and record further show that Rock failed to provide a written response to any of the initial complaints. Although the investigator sent numerous letters, made repeated phone calls, and visited Rock's residence in an attempt to contact

Rock, she only spoke with him on one occasion. During the conversation, Rock promised to provide a written response to one of the complaints but never complied with his promise. Rock also failed to respond to the formal complaint and failed to appear before the hearing panel.

The hearing panel concluded that Rock violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 1.15(a), KRPC 1.15(b), KRPC 1.16(d), KRPC 3.4(d), KRPC 8.1, KRPC 8.4(b), KRPC 8.4(c), KRPC 8.4(d), KRPC 8.4(g), and Supreme Court Rule 207, as alleged in the complaint. In addition, the hearing panel concluded that Rock violated Rule 211 (2004 Kan. Ct. R. Annot. 275) (answer to disciplinary complaint).

The hearing panel found the following aggravating and mitigating factors:

"Dishonest or Selfish Motive. The Respondent knowingly converted $50,000.00 that should have been paid to Mr. and Mrs. Howard, to Medicare, and to other medical providers. Because the Respondent knowingly converted $50,000.00, the Hearing Panel concludes that the Respondent's misconduct was motivated by dishonesty and selfishness.

"A Pattern of Misconduct. Included in this case are five complaints. The complaints involve similar misconduct. Accordingly, the Respondent engaged in a pattern of misconduct.

"Multiple Offenses. The Respondent violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 1.15, KRPC 1.16, KRPC 8.1, KRPC 8.4, Kan. Sup. Ct. R. 207, and Kan. Sup. Ct. R. 211. As such the Respondent committed multiple offenses.

"Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process. The Respondent knew that he was required to provide written responses to the complaints. The Respondent never filed such responses. The Hearing Panel, therefore, concludes that the Respondent obstructed the disciplinary proceeding.

"Vulnerability of Victim. The Respondent's clients were vulnerable to the Respondent's misconduct.

"Substantial Experience in the Practice of Law. The Kansas Supreme Court admitted the Respondent to practice law in 1980. At the time the Respondent engaged in misconduct, the Respondent had been practicing law for more than twenty years. Accordingly, the Hearing Panel concludes that the Respondent had substantial experience in the practice of law at the time he engaged in the misconduct.

"Indifference to Making Restitution. To date, the Respondent has made no effort to make restitution to any of his clients.

"Illegal Conduct, Including that Involving the Use of Controlled Substances. When the Respondent knowingly converted the $50,000 belonging to Mr. and Mrs. Howard, the Respondent engaged in illegal conduct.

. . . .

"Absence of a Prior Disciplinary Record. The Respondent has not previously been disciplined."

The hearing panel unanimously recommended that Rock be disbarred, relying on American Bar Association Standard 4.41 from the ABA Standards for Imposing Lawyer Sanctions (1999), which provides:

"Disbarment is generally appropriate when:
  (a) a lawyer abandons the practice and causes serious or potentially serious injury to a client; or
  (b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or
  (c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client."

The hearing panel further suggested that Rock be required to make complete restitution to his clients and the Client Protection Fund before filing a petition for reinstatement. Finally, the hearing panel recommended that a copy of the final hearing report be forwarded to the attorney admissions' offices and to the attorney discipline offices in California and Vermont, states in which it is believed that Rock has been living.

Rock failed to appear before this court either in person or through counsel, although lawfully notified of the setting of his disciplinary hearing. Because Rock did not file any exceptions to the hearing panel's findings within 20 days, the hearing panel's report is deemed to be admitted pursuant to Supreme Court Rule 212(c) and (d) (2004 Kan. Ct. R. Annot. 285).

The court, having considered the record and report of the hearing panel, accepts and concurs in the findings, conclusions, and recommendations of the hearing panel. The court agrees that Rock's misconduct requires disbarment.

IT IS THEREFORE ORDERED that Gordon M. Rock, Jr., be and he is hereby disbarred from the practice of law in the state of Kansas, that his privilege to practice law in the state of Kansas is

hereby revoked, and that the Clerk of the Appellate Courts of Kansas strike the name of Gordon M. Rock, Jr., from the roll of attorneys licensed in the state of Kansas.

IT IS FURTHER ORDERED that Gordon M. Rock, Jr., be required to make complete restitution to each of his former clients and the Client Protection Fund before he may petition this court for reinstatement.

IT IS FURTHER ORDERED that this order shall be published in the Kansas Reports, that the costs herein shall be assessed to Gordon M. Rock, Jr., and that Gordon M. Rock, Jr., forthwith shall comply with Supreme Court Rule 218 (2004 Kan. Ct. R. Annot. 301).

GERNON, J., not participating.

LARSON, S.J., assigned.